USI PROPERTIES CORP., Plaintiff,

v.

M.D. CONSTRUCTION COMPANY, INC. and Compañia De Desarrollo Cooperativo, Defendants.

No. Civ. 83–2647(JAF).

United States District Court, D. Puerto Rico.

May 26, 1999.

Geoffrey M. Woods, Harry Woods, Fernando Gallardo, San Juan, Puerto Rico, for Judgment Creditor Futura Development of P.R., Inc.

Paul B. Smith, Jr., Smith & Nevarez, San Juan, Puerto Rico, for defendant.

## OPINION AND ORDER

FUSTE, District Judge.

Judgment Creditor, Futura Development of Puerto Rico, Inc. ("Futura"), moves for proceedings on and in aid of the execution of judgment.

## I.

### Relevant Factual Background

The genesis of this lawsuit was a series of contracts executed in 1978. At that time, the parties were U.S.I. Properties Corp. ("USI"), MD Construction, Inc. ("MD"), Compañia de Desarrollo Cooperativo ("CDC"), April Industries, Inc. ("April"), the Government Development Bank for Puerto Rico ("GDB"), and the Royal Bank of Canada ("Royal Bank"). April was the sole owner of Futura Development Co. of Puerto Rico ("Futura"), the sole owner of MD. In 1978, USI sold a parcel of land to MD. April was MD's guarantor in the deal. MD planned to develop a housing project called Ciudad Cristiana. MD contracted with CDC to build seven-hundred housing units on the site. Royal Bank financed the deal. In 1982, CDC stopped financing the project. At this time, four-hundred and eighty of the planned seven-hundred units were built.

In October 1983, USI sued CDC and MD in federal court basing jurisdiction on diversity of citizenship. 28 U.S.C. § 1332. MD and CDC cross-claimed against each other. We found in favor of USI and MD. We ordered CDC to pay USI $1.2 Million and MD $11.4 Million, which was subsequently amended to $12.16 Million. CDC appealed and the First Circuit affirmed our decision. *U.S.I. Properties Corp. v. M.D. Construction Company, Inc.*, 860 F.2d 1 (1st Cir.1988). While this appeal was pending, both USI and MD moved for execution of judgment and began supplementary proceedings in aid of execution of judgment pursuant to Fed.R.Civ.P. 69(a). During the course of these proceedings, in January of 1989, MD announced that it had become Futura. CDC next petitioned the Supreme Court for a writ of certiorari which the Court denied. *Compañia de Desarrollo Cooperativo v. U.S.I. Properties Corp.*, 490 U.S. 1065, 109 S.Ct. 2064, 104 L.Ed.2d 629 (1989).

The Puerto Rico Legislative Assembly, which had created CDC, virtually liquidated it after this original litigation, leaving only a vacant corporate shell. Therefore, CDC never satisfied its judgment.

Subsequently, MD merged into Futura and Futura brought suit against the Commonwealth of Puerto Rico ("Futura suit") because CDC had been, for all intents and purposes, liquidated. The court held the Commonwealth of Puerto Rico accountable for payment of CDC's judgment in the amount of $12,266,392, plus interest. *Futura Development of Puerto Rico, Inc. v. Estado Libre Asociado de Puerto Rico*, 962 F.Supp. 248 (D.P.R.1997) ("*Futura I*"). The First Circuit vacated this judgment, holding that neither enforcement jurisdiction nor supplemental jurisdiction existed over the claim against the Commonwealth. *Futura Development of Puerto Rico v. Estado Libre Asociado de Puerto Rico*, 144 F.3d 7 (1st Cir. 1998) ("*Futura II*").

Futura now brings suit against the Commonwealth, CDC, and the Cooperative Development Administration ("CDA"), seeking to hold the Commonwealth of Puerto Rico as the judgment debtor of the MD judgment pursuant to Fed.R.Civ.P. 69(a). Plaintiff asserts that the Commonwealth could be held liable under either Puerto Rico Rule of Civil Procedure 51.7 or 59. Additionally, Futura moves to substitute or join the Commonwealth as successor in interest to CDC under Fed.R.Civ.P. 25.

The Commonwealth, CDC, and CDA ("collectively CDC") oppose Futura's motion asserting (1) lack of subject matter jurisdiction, and (2) issue preclusion. CDC alleges that the Commonwealth cannot be sued because it was never named, designated or served in the USI case. Alternatively, CDC alleges that the Eleventh Amendment bars suit against the Commonwealth. CDC asserts that having opted to sue only CDC, Futura must now abide by the consequences of that choice.

We begin by examining the complaint in the *Futura I* suit. The first cause of action

was the so-called "alter ego" claim. Futura asserted that CDC was the alter ego of the Commonwealth ("Estado Libre Asociado de Puerto Rico") ("ELA") and after judgment, the Commonwealth illegally performed a *de facto* liquidation of CDC to avoid paying the judgment. The second through seventh causes of action alleged a number of other claims against individual defendants.[1]

The district court granted partial summary judgment in favor of Futura, holding that CDC was the alter ego of ELA, that ELA was a *de facto* party to the litigation, and that ELA was responsible for the MD judgment. *Futura I*, 962 F.Supp. at 248. The second through seventh causes of action were dismissed *sua sponte*. *Id*. The First Circuit vacated that judgment, dismissing the first cause of action pursuant to *Peacock v. Thomas*, 516 U.S. 349, 116 S.Ct. 862, 133 L.Ed.2d 817 (1996), and remanding the second through seventh causes of action. *Futura II*, 144 F.3d at 7. Specifically, the First Circuit found that neither enforcement nor supplemental jurisdiction existed over the claims against the Commonwealth. *Id*.

In the present lawsuit, Futura asserts that the Commonwealth is the judgment debtor of the MD judgment pursuant to Fed.R.Civ.P. 69(a). Futura states that the Commonwealth could be held liable under either Puerto Rico Rule of Civil Procedure 51.7 or 59. Alternatively, Futura asserts that the Commonwealth should be joined or substituted as a party pursuant to Fed.R.Civ.P. 25(c). We examine these alleged bases for jurisdiction in turn.

1. The second through seventh claims alleged, among other things, that individual defendants: Deprived Futura of the equal protection to the laws; deprived Futura of due process rights; violated Futura's civil rights under 42 U.S.C. § 1983; impaired the obligation of contract in violation of Article I, Section 10 of the U.S. Constitution; caused Futura loss of reputation and credit by tortious interference; and damaged Futura pursuant to Article 1802 of the Civil Code of Puerto Rico.

2. Rule 51.7 provides:
 When a judgment is recovered against one or more of several debtors, jointly liable for an obligation, those debtors who are not parties to the action may be summoned to show cause why they could not be bound by the judgment

## II.

## *Fed.R.Civ.P. 69(a)*

Federal Rule of Civil Procedure 69(a) is a vehicle to enforce judgments via state laws, in the absence of a controlling federal statute. Rule 69(a) provides:

Process to enforce a judgment for the payment of money shall be a writ of execution, unless the court directs otherwise. The procedure on execution, in proceedings supplementary to and in aid of a judgment, and in proceedings on and in aid of execution shall be in accordance with the practice and procedure of the state in which the district court is held, existing at the time the remedy is sought, except that any statute of the United States governs to the extent that it is applicable. In aid of the judgment or execution, the judgment creditor or a successor in interest when that interest appears of record, may obtain discovery from any person, including the judgment debtor, in the manner provided in these rules or in the manner provided by the practice of the state in which the district court is held.

Fed.R.Civ.P. 69(a). Futura asserts that under Rule 69(a), jurisdiction is established under either Puerto Rico Rule of Civil Procedure 51.7 or 59.

### A. *Rule 51.7*

■ Futura asserts jurisdiction by virtue of Puerto Rico Rule of Civil Procedure 51.7.[2] Rule 51.7 applies only when two crite-

in the same manner as if they had been originally sued. The summons, according to this rule, must describe the judgment, and require the person summoned to appear on a specific day and hour to show cause why he should not be bound by the judgment. It shall not be necessary to file a new complaint. The summons must be accompanied by an affidavit of the plaintiff, his agent, representative or attorney, stating that the judgment or some part thereof remains unsatisfied, and specifying the amount due thereon.
After service of summons, the judgment debtor shall appear at the date specified thereon and at said hearing he may assert any defense of fact and law that may release him from liability. Matters thus raised may be argued as in other cases.

ria are satisfied: (1) a "previous joint liability arising from a contractual obligation" exists; and (2) the party "could have been summoned when the first action was filed." *Pauneto v. Núñez*, 115 D.P.R. 591 (1984). As to the first prong, the obligation must be express, it will not be assumed. *Federal Deposit Insurance Corp. v. Consolidated Mortgage and Finance Corp.*, 735 F.Supp. 456, 457 (D.P.R.1990).

According to these requirements, Futura asserts that the Commonwealth is the alter ego of CDC and that this is a contractual obligation based upon the contract between CDC and Futura. Furthermore, Futura asserts that the Commonwealth could have been summoned when the action was first filed.

■ We find that Futura is attempting to get the proverbial second bite at the apple. The First Circuit expressly premised lack of jurisdiction upon a rejection of Futura's alter ego claim. Specifically, the Circuit stated:

> Although we do not discount the possibility that some other alter ego claims can be so characterized, in this case, the Commonwealth and CDC are undeniably separate jural entities, and CDC (but not the Commonwealth) was the original judgment debtor. *See* P.R.Laws Ann. Tit. 5 § 981(d) (stating that the Commonwealth is not liable for the debts of CDC). It is clear, then that this alter ego claim seeks to do more than simply identify the original judgment debtor.
>
> It cannot be denied that this case is separate from the original proceeding. Like the veil-piercing claim in *Peacock,* an alter ego claim involves an independent theory of liability under equity, complete with new evidence.

*Futura II,* 144 F.3d at 11. Therefore, any attempt to fashion a new claim of jurisdiction on an alter ego theory must necessarily fail. The First Circuit expressly recognized that the Commonwealth's behavior throughout these proceedings was "despicable ... However, federal courts are of limited jurisdic-

P.R.R.Civ.P. 51.7, 32 L.P.R.A.App. III.

**3.** Furthermore, even if we found Futura to have satisfied the first prong of the Rule 51.7 inquiry,

tion, and may not weigh the equities of a case until jurisdiction has been established." *Id.* at 13. In this case, we find that Futura's alter ego theory is precluded by the First Circuit's previous disposition. We need go no further. In accordance with the foregoing, we find that there is no jurisdiction pursuant to Puerto Rico Rule of Civil Procedure 51.7.[3]

## B. *Rule 59*

■ Puerto Rico Rule of Civil Procedure 59 authorizes courts to grant declaratory judgments. Nonetheless, a necessary prerequisite to exercising declaratory judgment power is subject matter jurisdiction. Authority to declare a declaratory judgment does not confer an independent basis for federal jurisdiction; rather, one must previously exist. *Hercules, Inc. v. United States,* 516 U.S. 417, 430, 116 S.Ct. 981, 134 L.Ed.2d 47 (1996) (stating that federal courts do not have jurisdiction over claims "based merely on equitable considerations") (quoting *United States v. Minnesota Mut. Inv. Co.,* 271 U.S. 212, 217–18, 46 S.Ct. 501, 70 L.Ed. 911 (1926)). Since no alternate independent basis of federal jurisdiction exists, we have no jurisdiction over this claim.

Futura tries to present the claim as part of the original lawsuit and again asserts the alter ego theory coupled with the theory that the Commonwealth is a *de facto* party to the original case. Again, we find Futura to be grasping at straws in a vain attempt to hold the Commonwealth liable. These arguments are strikingly similar to those rejected by the First Circuit in the Futura II case. Specifically, the Circuit noted:

> Recognizing the possibility that *Peacock* might govern this appeal, Futura argues that an appropriate remedy is not a dismissal of this case, but rather a remand to the district court with instructions to deem the first cause of action in this case a motion under P.R.R.Civ.P. 59 for a declaratory judgment that the Commonwealth is the party in interest in the original litigation and required to comply with the judg-

they cannot satisfy the second prong because of the Eleventh Amendment immunity bar. *See infra* III.

ment. However, we cannot do so. Having determined that federal courts have no enforcement of supplemental jurisdiction over this proceeding, we similarly have no authority for a declaration along the lines suggested by Futura.

*Futura II*, 144 F.3d at 13 (internal citations omitted). We, accordingly, find no jurisdiction pursuant to Puerto Rico Rule of Civil Procedure 59.

## III.

### *Fed.R.Civ.P. 25(c)*

 Futura's final stab at jurisdiction is substitution pursuant to Federal Rule of Civil Procedure 25(c). Rule 25(c) provides:

> In the case of any transfer of interest, the action may be continued by or against the original party, unless the court upon motion directs the person to whom the interest is transferred to be substituted in the action or joined with the original party. Service of the motion shall be made as provided in subdivision (a) of this rule.

Fed.R.Civ.P. 25(c). The First Circuit has held Rule 25 applicable not only to pending actions in district court, but also to enforce a judgment. *Explosives Corp. of America v. Garlam Enterprises Corp.*, 817 F.2d 894 (1st Cir.1987) (citing 3B MOORE'S FEDERAL PRACTICE ¶ 25.03[1], at 25–101 (2d ed.1977)). However, courts have held that substitution is improper where it destroys the jurisdiction. *Freeport–McMoRan, Inc. v. KN Energy, Inc.*, 498 U.S. 426, 427, 111 S.Ct. 858, 112 L.Ed.2d 951 (1991) (citing *McMoran Oil and Gas Co. v. KN Energy, Inc.*, 907 F.2d 1022, 1024 (1990)). "A motion under Rule 25(c) for joinder or substitution of a party after suit has been commenced is addressed to the sound discretion of the court, taking into account all the exigencies of the situation." *Federal Deposit Insurance Corp. v. Tisch*, 89 F.R.D. 446, 448 (E.D.N.Y.1981) (citing *McComb v. Row River Lumber Co.*, 177 F.2d 129 (9th Cir.1949)). "Rule 25(c) is not de-

signed to create new relationships among parties to a suit but is designed to allow the action to continue unabated when an interest in the lawsuit changes hands." *In re Covington Grain Co. (Collateral Control Corp. v. Deal)*, 638 F.2d 1362, 1364 (5th Cir.1981). There is no time limit for a Rule 25(c) motion and the determination is solely within the discretion of the court. 7C Charles Alan Wright, Arthur R. Miller & May Kay Kane, FEDERAL PRACTICE AND PROCEDURE 2d § 1959, at 561 (1986).

 Futura moves to substitute or join the Commonwealth in the original litigation.[4] The essence of the claim is that the Commonwealth was a *de facto* party to the original litigation. Specifically, Futura alleges that the Commonwealth's control of CDC during the original litigation and subsequent dismantling of CDC after the litigation are exactly the type of misbehavior which Rule 25(c) addresses.

We remain unpersuaded by Futura's arguments. The main fault of this motion is its untimeliness. This lawsuit is aptly described as a byzantine journey through the annals of the First Circuit and the District of Puerto Rico. Since the filing of the first complaint in 1983, there have been multitudinous efforts to hold the Commonwealth liable for CDC's judgment. While we empathize with Futura and understand the harshness of the situation, we think that any such action is foreclosed by the previous judgments by the First Circuit.

Although Futura repackages its alter ego claim, it remains virtually unchanged from the previous proceeding. As the First Circuit stated:

> To adopt Futura's argument, we would be forced to treat the corporate form of CDC as a complete nullity—to look through its legal identity to the party standing behind it—and to do so under the guise of making a factual determination necessary to determine our subject matter jurisdiction over

4. We note that neither the Commonwealth, MD nor CDC has responded to this argument. Their lawyers have filed two motions for extensions of time to respond and failed to meet the latest deadline, April 26, 1999. Thus, we are left with Plaintiffs' unopposed motion on this point. Nonetheless, we are still obliged to determine whether, upon examination of the record, the motion should be granted. *See, e.g., Mullen v. St. Paul Fire & Marine Ins. Co.*, 972 F.2d 446, 451–52 (1st Cir.1992).

this case. This would be an unwarranted expansion of our jurisdiction. Alter ego/veil-piercing claims involve a substantive theory for imposing liability upon entities that would, on first blush, not be thought liable for a tort or on a contract.

*Futura II*, 144 F.3d at 12 (internal citations omitted). The Circuit held that "insofar as alter ego theories require factually independent proceedings, they will not subvert the rule of *Peacock*." *Id.*

The main difference between Futura's first claim and this one is the basis for jurisdiction. In *Futura II*, the Circuit found that neither enforcement nor supplemental jurisdiction existed. On the other hand, Futura asserts that the present basis, Rule 25(c), extends personal jurisdiction and venue over the successor party. *Minnesota Mining & Mfg. Co. v. Eco Chem, Inc.*, 757 F.2d 1256, 1261–62 (Fed.Cir.1985). However, we find that this situation is markedly different when the Commonwealth is a party. In this instance, extension of jurisdiction over the Commonwealth would eviscerate Puerto Rico's sovereign immunity. *See Futura II*, 144 F.3d at 13 (stating that "Puerto Rico, like any state, enjoys the sovereign privilege not to be sued in federal court under diversity").[5] The cases Futura cites and our research reveal many instances of substitution of corporate entities with ensuing transfer of jurisdiction and venue. *See, e.g., Explosives Corp. of America v. Garlam Enterprises Corp.*, 817 F.2d 894 (1st Cir.1987); *Minnesota Mining & Manufacturing Co. v. Eco Chem, Inc.*, 757 F.2d 1256 (Fed.Cir.1985). However, we unearthed no authority for the proposition that the state can be substituted

in the same way. The reason is clear—sovereign immunity. The Eleventh Amendment[6] bars suits in federal court against a state by its own citizens. *Edelman v. Jordan*, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). Even if a State is not a named party to the action, the suit may, nonetheless, be barred by the Eleventh Amendment. *Fitzpatrick v. Bitzer*, 427 U.S. 445, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976). The Court has stated:

> [W]hen the action is in essence one for the recovery of money from the state, the state is the real, substantial party in interest and is entitled to invoke its sovereign immunity from suit even though individual officials are nominal defendants.

*Ford Motor Co. v. Department of Treasury of Ind.*, 323 U.S. 459, 462, 65 S.Ct. 347, 89 L.Ed. 389 (1945).

Nonetheless, Futura asserts that the Commonwealth has waived its immunity in this instance. We disagree. *See Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 238, 105 S.Ct. 3142, 87 L.Ed.2d 171 (1985) (stating that the "test for determining whether a state has waived its [Eleventh Amendment] immunity from federal-court jurisdiction is a stringent one"). The Supreme Court has deemed that a state has waived its sovereign immunity "only where stated 'by the most express language or by such overwhelming implications from the text as [will] leave no room for any other reasonable construction.'" *Id.* (internal citation omitted).

There are two types of waivers, explicit and constructive.[7] Explicit waivers occur when the state expressly consents to

---

**5.** We note that Futura, for the sake of appeal, asserts that the Eleventh Amendment does not apply to Puerto Rico due to the Supreme Court's denial of a writ of certiorari in the *Futura* case in which Futura asserted that Puerto Rico could not claim Eleventh Amendment immunity. The First Circuit has definitively decided this issue. We, accordingly, consider this issue foreclosed by the First Circuit.

**6.** The Eleventh Amendment states:

> The judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another

State, or by Citizens or Subjects of any Foreign State.

U.S. Const amend. XI.

**7.** Futura asserts a different analytical framework for analyzing its Eleventh Amendment. The proposed double-prong analysis is: (1) whether the Commonwealth, controlled by CDC in this litigation, had an alter ego/virtual representative/successor-in-interest relationship with CDC and was a *de facto* party in this litigation; and (2) if the Commonwealth was a *de facto* party, Eleventh Amendment immunity is precluded because the defense should have been raised before the trial court. *Docket Document No. 574, p. 37.* We reject this framework.

be sued in federal court. *Atascadero,* 473 U.S. at 241, 105 S.Ct. 3142. Clearly, there has been no explicit waiver here. At no point has the Commonwealth consented to being sued in federal court. Each and every filing made by the Commonwealth begins with the phrase that the parties "appear with express reservation of their right to aver the lack of jurisdiction of the Honorable Court and/or the State's immunity from suit under the Eleventh Amendment to the United States Constitution." *See, e.g., Docket Documents Nos. 565 and 585.*

Constructive waiver, on the other hand, is rarely found and has become highly disfavored. The high-water mark for the doctrine occurred in 1964, in the case of *Parden v. Terminal Railway of Alabama State Docks Department,* 377 U.S. 184, 84 S.Ct. 1207, 12 L.Ed.2d 233 (1964). In that case, the Court held that Alabama had constructively waived its immunity to suit under the Federal Employers' Liability Act by choosing to operate a railroad in light of the statute. The state had explicitly disavowed consent in writing, but the Court, nonetheless, found a constructive waiver. Justice Brennan, writing for the majority, reasoned:

> Our conclusion is simply that Alabama, when it began operation of an interstate railroad approximately 20 years after enactment of the FELA, necessarily consented to such suit as was authorized by that Act. By adopting and ratifying the Commerce Clause, the States empowered Congress to create such a right of action against interstate railroads; by enacting the FELA in the exercise of this power, Congress conditioned the right to operate a railroad in interstate commerce upon amenability to suit in federal court as provided by the Act; by thereafter operating a railroad in interstate commerce, Alabama must be taken to have accepted that condition and thus to have consented to suit.

*Id.* at 192, 84 S.Ct. 1207. However, the Court has sharply retrenched from that position. *See Edelman,* 415 U.S. at 651, 94 S.Ct. 1347 (stating that "[c]onstructive consent is not a doctrine commonly associated with the surrender of constitutional rights and we see no place for it here"); *see also Atascadero,* 473 U.S. at 234, 105 S.Ct. 3142 (Eleventh Amendment immunity not waived when state receives federal funds under the Rehabilitation Act of 1973); *Florida Dept. of Health & Rehabilitative Servs. v. Florida Nursing Home Assn.,* 450 U.S. 147, 101 S.Ct. 1032, 67 L.Ed.2d 132 (1981) (Eleventh Amendment immunity not waived when state agreed to be bound by the requirements of the federal Medicaid Act). In 1987, the Court overturned *Parden.* In *Welch v. Texas Dept. of Highways & Pub. Transp.,* 483 U.S. 468, 107 S.Ct. 2941, 97 L.Ed.2d 389 (1987), the Court held that Congress, in enacting the Jones Act, did not expressly provide for states to be sued in federal court. Therefore, at this point, for constructive waiver to exist at all, Congress must explicitly state its intention to hold states liable in federal court. Clearly, this is not the case at hand. There is no federal statute authorizing suit against the states in federal court in this case, the only viable alternative being litigation in the Commonwealth court system.

### IV.

### *Conclusion*

In accordance with the foregoing, we **DENY** Futura's motion as to all claims. This Opinion and Order disposes of *Docket Documents Nos. 562, 565, and 574.*

**IT IS SO ORDERED.**