**FUTURA DEVELOPMENT OF PUERTO RICO, INC., formerly M.D. Construction Company, Inc., Plaintiff,**

v.

**ESTADO LIBRE ASOCIADO DE PUERTO RICO, et al., Defendant.**

**No. CIV. 92–2534(SEC).**

United States District Court, D. Puerto Rico.

June 26, 2003.

232

Harry E. Woods, Esq., Woods & Woods, San Juan, for Plaintiffs.

Benjamin Acosta–González, Esq., Old San Juan, Carlos E. López–López, Esq., Llovet–Zurinaga & Lopez, P.S.C., Mayra Maldonado–Colón, Esq., John F. Nevarez, Esq., Ivonne Palerm–Cruz, Esq., Commonwealth Department of Justice, Federal Litigation Division, San Juan, for Defendants.

## OPINION AND ORDER

CASELLAS, District Judge.

*The Saga Continues . . .* Pending before the Court is Defendants Hernandez Colon, Rivera Cruz and Feliciano Oliveras' Motion to Dismiss pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted (Docket #205). Plaintiff timely filed its opposition to Defendants' motion (Docket #216). On October 28, 2002, Magistrate Judge Justo Arenas issued a Report and Recommendation regarding Defendants' motion (Docket #223). Magistrate Arenas recommended that Defendants' motion to dismiss be granted as to Plaintiff's fifth and sixth causes of action and denied as to the second, third and seventh causes of action. Both parties objected to the Magistrate's Report and Recommendation (Docket ##225 and 226) and, although Plaintiff has filed a motion alleging that Defendants' objections were not filed in a timely fashion (Docket #227), due to the complexity and magnitude of this case the Court will allow said objections. However, the Court would like to point out that many, if not all, of the objections submitted by Defendants allege that the Magistrate Judge issued a report and recommendation that is inconsistent with his previous one and that the previous judgment issued by this Court dismissed Plaintiff's claims against the individual Co-defendants. But, Defendants fail to comprehend that the previous report and recommendation was issued without the benefit of examining the amended verified compliant, and that the previous judgement dismissing the claims against the individual Co-defendants was reversed by the Court of Appeals. Therefore, after carefully reviewing the Magistrate Judge's Report and Recommendation, and taking into consideration the parties' objections, we conclude that the Magistrate's assessment is accurate and, thus, hereby **APPROVE** and **ADOPT** it as our own. Therefore, for the reasons set forth herein, Defendants' motion to dismiss will be **GRANTED** as to Plaintiff's fifth and sixth causes of action and **DENIED** as to the second, third and seventh causes of action.

## Factual Background

In 1988, M.D. Construction Company, Inc., the predecessor of plaintiff Futura Development of Puerto Rico, Inc. (hereinafter "Futura"), obtained a verdict in its favor against the now insolvent Compañía de Desarrollo Cooperativo (hereinafter "CDC") in the amount of $12,266,000.00 (hereinafter "MD judgment"). *See U.S.I. Prop. Corp. v. M.D. Constr. Co.,* 860 F.2d 1 (1st Cir.1988), *cert denied,* 490 U.S. 1065, 109 S.Ct. 2064, 104 L.Ed.2d 629 (1989). Unable to collect the judgment, Plaintiff filed a complaint on October 28, 1992 against defendant Estado Libre Asociado de Puerto Rico (hereinafter "ELA"), and various government officials, including former Governor Rafael Hernández Colón, former Secretary of Justice Héctor Rivera Cruz, and Jesús I. Feliciano Oliveras. The complaint alleged in its first count that the Commonwealth of Puerto Rico was the "alter ego" of CDC and as such was responsible for the judgment. Counts two through five alleged federal and state claims against the individual defendants based on the Equal Protection and Due Process Clauses of the United States Constitution, the Civil Rights Act codified in 42 U.S.C. § 1983, 1985(3), and 1988, as well as a claim for tortious interference with a business relationship under Puerto Rico law.

## Procedural Background

Plaintiff's original complaint was dismissed without prejudice for failure to state a claim upon which relief could be granted on all but the first count, namely the "alter ego" claim. Afterwards, the

court allowed Plaintiff to file an amended complaint in order to cure the defects that caused the original complaint to be dismissed. On February 13, 1996, Plaintiff filed a "Verified Amended Complaint," in which among other things, Plaintiff added two additional causes of action against the individual Defendants. One was based on the Contracts Clause of the United States Constitution, U.S. Const. art. I, § 10, and the other one was based on state tort law under article 1802 of the Puerto Rico Civil Code, 31 P.R. Laws Ann. § 5141.

Subsequently, Plaintiff moved for partial summary judgment on the first count, the "alter ego" claim. The court granted said motion on March 18, 1997. *Futura Dev. of Puerto Rico. Inc. v. Estado Libre Asociado de Puerto Rico,* 962 F.Supp. 248 (D.P.R.1997), *rev'd in part. vacated in part,* 144 F.3d 7 (1st Cir.), *cert. denied,* 525 U.S. 930, 119 S.Ct. 338, 142 L.Ed.2d 278 (1998). In the same Opinion and Order, the Court *sua sponte* dismissed Plaintiff's second through seventh causes of action holding that like the original, the amended complaint failed to draw a nexus between the individual Defendants and the alleged governmental scheme to preclude payment of the judgment in Plaintiff's favor. *Futura,* 962 F.Supp. at 258. Both parties cross-appealed.

The Court of Appeals for the First Circuit vacated the district court's Opinion granting partial summary judgment to Plaintiff and dismissed the "alter ego" claim on jurisdictional grounds. *Futura Dev. of Puerto Rico. Inc. v. Estado Libre Asociado de Puerto Rico,* 144 F.3d at 9. The Court of Appeals also reversed the district court's *sua sponte* dismissal of counts two through seven of the amended complaint holding that the Court erred in not providing the parties "with notice and an opportunity to respond." *Futura,* 144 F.3d at 14. Thereafter, the case was re-

manded to this Court for further proceedings.

The case is now before the court on Defendants Hernández Colón, Rivera Cruz, and Feliciano Oliveras' motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted.

**Standard of Review**

In assessing whether dismissal for failure to state a claim is appropriate, "the trial court, must accept as true the well-pleaded factual allegations of the complaint, draw all reasonable inferences therefrom in the plaintiff's favor, and determine whether the complaint, so read, limns facts sufficient to justify recovery on any cognizable theory." *LaChapelle v. Berkshire Life Ins. Co.,* 142 F.3d 507, 508 (1st Cir.1998) (citations omitted). "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), *quoted in Davis v. Monroe County Bd. of Education,* 526 U.S. 629, 119 S.Ct. 1661, 1676, 143 L.Ed.2d 839 (1999). *See also Correa–Martínez v. Arrillaga–Beléndez,* 903 F.2d 49, 52 (1st Cir.1990) (dismissal for failure to state a claim is warranted "only if it clearly appears, according to the facts alleged, that the plaintiff cannot recover on any viable theory").

But "[a]lthough this standard is diaphanous, it is not a virtual mirage." *Berner v. Delahanty,* 129 F.3d 20, 25 (1st Cir.1997) *citing Gooley v. Mobil Oil Corp.,* 851 F.2d 513, 515 (1st Cir.1988). In order to survive a motion to dismiss, "a complaint must set forth 'factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theo-

ry.'" *Id.* In judging the sufficiency of a complaint, courts must "differentiate between well-pleaded facts, on the one hand, and 'bald assertions, unsupportable conclusions, periphrastic circumlocution, and the like,' on the other hand; the former must be credited, but the latter can safely be ignored." *LaChapelle,* 142 F.3d at 508 (quoting *Aulson v. Blanchard,* 83 F.3d 1, 3 (1st Cir.1996)). *See also Rogan v. Menino,* 175 F.3d 75, 77 (1st Cir.1999). Courts, moreover, "will not accept a complainant's unsupported conclusions or interpretations of law." *Washington Legal Foundation v. Massachusetts Bar Foundation,* 993 F.2d 962, 971 (1st Cir.1993). Yet courts must bear in mind that apart from allegations of civil rights or RICO violations, fraud, mistake or standing "it is enough for a plaintiff to sketch an actionable claim by means of a generalized statement of facts from which the defendant will be able to frame a responsive pleading." *Langadinos v. American Airlines, Inc.,* 199 F.3d 68, 73 (1st Cir.2000) *quoting Garita Hotel Ltd. Partnership v. Ponce Fed. Bank,* 958 F.2d 15, 17 (1st Cir.1992) (internal quotation marks omitted).

Furthermore, in ruling upon a motion to dismiss the court must ordinarily ignore matters outside the pleadings. *See, e.g., Maldonado v. Domínguez,* 137 F.3d 1, 6 (1st Cir.1998) (in order to avoid conversion of a Rule 12(b)(6) motion into a Rule 56 motion, district court must ignore matters outside the pleadings); *Rodríguez v. Fullerton Tires Corp.,* 115 F.3d 81, 83 (1st Cir.1997); *Vega–Rodríguez v. Puerto Rico Telephone Co.,* 110 F.3d 174, 177 (1st Cir. 1997). Thus, in light of the aforementioned standard, we will proceed to analyze each cause of action alleged in Plaintiff's amended complaint individually to determine if sufficient facts have been pled to survive Defendants' motion to dismiss.

### Applicable Law and Analysis

The court is presented with the question of whether the amended verified complaint filed by Futura in the instant case, cured the defects that caused it to be originally dismissed. Defendants' arguments in support of their 12(b)(6) motion are that it does not; that it still fails to draw a nexus between the individual Defendants' conduct and the alleged government scheme to preclude payment of the judgment in Futura's favor. Additionally, Defendants claim that even if factually supported, the claims against them are barred by the Eleventh Amendment, because they are absolutely immune from suits that are based on actions committed in their official capacity. Defendants further contend that they enjoy qualified immunity from suits that allege unlawful conduct in their individual capacities. Furthermore, they argue that the claims are barred by the applicable statute of limitation. Futura on the other hand claims that the verified amended complaint specifically addressed the flaws identified by the Court in the original complaint and that it is replete with new allegations that amply satisfy the requirements of notice pleading. Futura additionally claims that Defendants' motion to dismiss is another attempt to delay and postpone discovery in a case that is already 10 years old.

### Plaintiff's Second Cause of Action— Equal Protection

Futura's second cause of action in its verified amended complaint (paragraphs 105–161) alleges that Defendants' conduct deprived it of the equal protection of the laws. It claims in general that, pursuant to a conspiracy, the ELA and the individual Co-defendants deprived Futura of the equal protection of the laws guaranteed by the Fourteenth Amendment of the United States Constitution by treating Futura differently than similarly situated persons, by

the discriminatory application of 5 P.R. Laws Ann. § 981 *et seq.*, and by the unequal treatment in the application of principles and laws regarding creditors rights. Futura further claims that Defendants arbitrarily applied to them the scheme by which public corporations are liquidated and dissolved in Puerto Rico, all of these, according to Futura, without any rational basis or legitimate state interest (See Docket # 88, at 37, ¶ 107).

Among other things, Futura alleges the unequal treatment given to them by favoring other CDC creditors and denying them payment of the MD judgment. These general allegations were part of the original complaint. Futura continues—and for a substantial part of the complaint—to give examples on how CDC was held out as an instrumentality of the ELA and how the ELA was responsible for its debts (Docket # 88, at 42, ¶ 115b). Similarly, a number of examples are presented on how, shortly after the verdict in the original litigation, CDC started to be held out as a public corporation with the ELA not being responsible for its debts (Docket # 88, at 46, ¶ 115b). Paragraph 118 of the complaint alleges that "defendants have caused the other creditors of CDC to be paid and have caused Futura not to be paid the MD Judgment, and have proceeded to surreptitiously strip CDC of its assets ... to evade payment of the MD judgment." (Docket # 88, at 51, ¶ 118). In essence, Plaintiff's equal protection cause of action has added forty-six (46) new allegations, replete with a number of examples in which Plaintiff attempts to show that Defendants' actions deprived it of the equal protection of the laws. Therefore, the Court needs to determine if those new allegations contain sufficient factual references so as to cure the deficiencies found by the Court in the original complaint.

The Fourteenth Amendment of the United States Constitution states that: "No State shall(3)27 deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. The Equal Protection Clause commands that similar governmental treatment be accorded to similarly situated entities. *See Barrington Cove. Ltd. P'ship v. R.I. Hous. & Mortgage Fin. Corp.*, 246 F.3d 1, 7 (1st Cir.2001) *citing City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439–40, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985). "To survive scrutiny, an equal protection claim must be based upon a challenge to a legislative or administrative scheme or state promulgated rule, or upon an unconstitutional application of such laws or rules." *Koelsch v. Town of Amesbury*, 851 F.Supp. 497, 501 (D.Mass.1994) (citations omitted). Furthermore, in order to establish its claim, Futura will have "to allege facts indicating that, 'compared with others *similarly situated*, [it] was selectively treated based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or *bad faith* intent to injure a person.'" *Barrington Cove Ltd. P'ship*, 246 F.3d at 7 *citing Rubinovitz v. Rogato*, 60 F.3d 906, 909–10 (1st Cir.1995). In its complaint, Plaintiff has to plead facts that specifically identify the particular instances of discrimination. *See Langadinos v. American Airlines. Inc.*, 199 F.3d 68, 73 (1st Cir.2000) *quoting Dartmouth Review v. Dartmouth College*, 889 F.2d 13, 16 (1st Cir.1989). "[A] plaintiff may not prevail simply by asserting an inequity and tacking on the self-serving conclusion that the defendant was motivated by a discriminatory animus." *Correa–Martinez v. Arrillaga–Beléndez*, 903 F.2d 49, 53 (1st Cir.1990) (citation omitted).

Defendants argue in their motion to dismiss, and repeat in their objections

to the report and recommendation, that Plaintiff's amended complaint does not contain allegations that support a violation of Futura's equal protection rights since they, still, do not establish a casual nexus or connection between the individual Defendants and known legislators conspiring with Defendants to deprive Futura of its equal protection rights in the assignment of funds. Therefore, they request that the Court be consistent with its previous pronouncement and dismiss the second cause of action as it did in the Final Judgment entered on March 18, 1997 regarding the same claim (Docket # 112). However, we do not agree with Defendants' argument.

Upon a close review of Plaintiff's amended complaint, we, as well as the Magistrate Judge, find that said complaint reveals that although the general allegation is that the individual Defendants acting under color of state law conspired to deny Futura the equal protection of the laws, such general allegation is factually supported by a number of examples linking the individual Co-defendants to the alleged unlawful actions. Some of these examples are stated in the amended complaint (Docket # 88) as follows.

Paragraph 115a provides several examples of how prior to the MD judgment, CDC was regarded as an instrumentality of the ELA, with the ELA being responsible for all its debts. Paragraph 115b on the other hand states that, shortly after the 1987 verdict, former Governor Hernández Colón "made a public statement for the express purpose stating [sic] that the ELA would not be responsible for the MD judgment...." (Docket # 88, at 46–47, ¶ 115b). Similarly, paragraph 118a alleges that Hernández Colón and Rivera Cruz, aided and abetted by the other Defendants failed to provide the Puerto Rico House of Representatives with all relevant information, which in turn caused: (1) the condo-nation of a debt owed to CDC by League of Cooperatives of Puerto Rico; and (2) the passage of a joint resolution stripping CDC of an asset that would have been available to satisfy the MD Judgment. Paragraph 118c alleges that, with the knowledge and participation of the other defendants, Hernández Colón and Rivera Cruz submitted to the Puerto Rico Senate incomplete information that caused the passage of another Joint Resolution, this time instructing CDC to accept as payment for a debt owed by Cooperativa Lafayette a parcel of land and to transfer said property to the Puerto Rico Institute of Culture. These actions, according to Plaintiff, caused CDC to surrender valuable assets that might have been used to collect the judgment. Paragraph 132 states that Governor Hernández Colón, with the assent of the other Defendants, aborted legislation that was proposed in 1992 to dissolve CDC, and that such conduct was due to the fact that Defendants wanted to cover up the truth about the surreptitious de facto liquidation of CDC for a period of over five years.

There are a number of additional examples of conduct allegedly engaged in by Defendants that, if presented and proven at trial, would evidence an intent to injure Futura and the unequal treatment given to it by Defendants' unlawful conduct. Because for the purpose of this motion, these factual allegations must be accepted as true and all reasonable inferences construed in favor of the Plaintiff, we find that sufficient facts have been pled to state a claim for the denial of the equal protection of the laws. For these reason Defendants' motion to dismiss will be **DENIED** with regards to Plaintiffs second cause of action.

**Plaintiff's Third Cause of Action—Due Process**

Futura's third cause of action alleges in pertinent part that pursuant to a conspira-

cy, the ELA and the individual Co-defendants have intentionally and deliberately denied Futura payment of the MD judgment. Futura claims that such denial is so unreasonable, unfair, arbitrary, and unjustified as to amount to a taking of property without due process of law in direct contravention of the Fifth and Fourteenth Amendments of the United States Constitution. Futura additionally argues that the delay in payment of the MD judgment resulted in a deprivation of its vested property interest in said judgment, conduct that shocks the conscience and constitutes a violation of both procedural and substantive due process. (Docket # 88, at 81, ¶ 165.)

Moreover, Futura alleges that the ELA and individual Defendants refused to provide them with a suitable post-deprivation remedy (Docket # 88, at 84, ¶ 176), challenging Defendants' conduct as random, unauthorized and not engaged in accordance with established Commonwealth procedures. (Docket # 88, at 84, ¶ 177.) Notwithstanding its arguments that Defendants refused to provide a post-deprivation remedy, Futura claims that it was futile for them to take steps to secure such remedy. (Docket # 88, at 84–85, ¶ 178.) All of these allegations are claimed by Plaintiff to be caused by Defendants under color of state law and without a reasonable basis or legitimate state interest.

**Procedural Due Process**

■ The Due Process Clause states that no state shall "deprive any person of life, liberty or property without due process of law." U.S. Const. amend. XIV, § 1. In the context of deprivation of property by state actors, it has been held that when random and unauthorized conduct that is not engaged in pursuant to an established state procedure, the requirements of due process are satisfied by providing a suitable post-deprivation remedy. *See Parratt*

*v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), *overruled on other grounds,* 474 U.S. 327, 329, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986). In *Hudson v. Palmer,* 468 U.S. 517, 533, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984), the Court held that, like in negligent deprivations, intentional deprivations of property by state officials do not violate the procedural requirements of due process if a post-deprivation remedy is available. In light of these principles, it has been held that "[a] procedural due process claim is not actionable unless, *inter alia,* no adequate 'post-deprivation remedy' is available under state law." *Pérez–Ruiz v. Crespo–Guillén,* 25 F.3d 40, 42 (1st Cir.1994) (citations omitted).

■ A review of Plaintiffs amended complaint in conjunction with its opposition to Defendants' motion to dismiss reveals a contradiction. In the complaint, Plaintiff challenges Defendants' conduct as random and unauthorized (Docket # 88, at 84, ¶ 177), whereas in its opposition, Plaintiff argues that Defendants' conduct was intentional. (See Docket # 216, at 29–30.) In any event, the analysis is the same. Plaintiff has to allege that no adequate post-deprivation remedy was available. In its amended complaint, Futura generally states that there is no post-deprivation remedy that could have been given.(Docket # 88, at 86, ¶ 183.) Additionally, Futura alleges that the Defendants refused to provide it with a suitable post-deprivation remedy. (Docket # 88, at 84, ¶ 176.) The problem with the amended complaint is that it fails to state any factual reference as to how it is that Defendants refused to provide said remedy. It does not allege that the remedy was requested and denied; it only generally states that given the countless ways in which Defendants had evaded payment, it was absolutely futile for Plaintiff to secure a post-deprivation hearing. (Docket # 88, at 84–85,

¶ 178.) Considering that there are no set of specific facts pleaded by Plaintiff describing the availability and adequacy of a post-deprivation remedy, or describing any instance of refusal of such a remedy other than its general position of the futility of attempting to secure one, Futura's procedural due process claim must be **DISMISSED.**

### Substantive Due Process

■ In its opposition to Defendants' motion to dismiss, plaintiff asserts that Defendants' conduct goes beyond the mere refusal to pay a judgment. Futura claims that to evade payment of the MD judgment, the individual Co-defendants "unleashed the full power of the government's machinery, completely uncontrolled by the restraining mechanisms found in the Constitution and the laws, in order to cause the judgment not to be paid." (Docket # 216, at 35, ¶ 3.) This conduct, according to plaintiff, shocks the conscience and therefore constitutes a violation of Futura's substantive due process rights.

■ It has been held that there are two theories under which a plaintiff may bring a substantive due process claim. Under the first, a plaintiff must demonstrate a deprivation of an identified liberty or property interest protected by the Fourteenth Amendment. Under the second, a plaintiff is not required to prove the deprivation of a specific liberty or property interest, but, rather, he or she must prove that the state's conduct "shocks the conscience." *Cruz–Erazo v. Rivera–Montañez,* 212 F.3d 617, 622 (1st Cir.2000) *quoting Brown v. Hot, Sexy, & Safer Prods. Inc.,* 68 F.3d 525, 531 (1st Cir.1995). Furthermore it has been said that a state action shocks the conscience when such actions are "arbitrary and capricious, or those that· run counter to 'the concept of ordered liberty,' or those which, in context,

appear 'shocking or violative of universal standards of decency.'" *Cruz–Erazo v. Rivera–Montañez,* 212 F.3d at 622 (citations omitted). A substantive due process claim may rest not only on the perceived procedural flaws of the particular governmental action, but on the idea that the government's action, notwithstanding its procedure, is in itself impermissible. *Amsden v. Moran,* 904 F.2d 748, 753 (1st Cir.1990). The conduct alleged to shock the conscience must "do more than offend some fastidious squeamishness or private sentimentalism...." *See Rochin v. California,* 342 U.S. 165, 172, 72 S.Ct. 205, 96 L.Ed. 183 (1952). Consequently, Plaintiff must allege in its complaint, with specific factual basis, the governmental action that in its opinion shocks the conscience.

Plaintiff's amended complaint contains a number of examples of Defendants' deliberate conduct directed towards the goals of evading payment of the MD judgment. Defendants' conduct has already been described as unjust. *See Futura Dev. of Puerto Rico. Inc. v. Estado Libre Asociado de Puerto Rico,* 144 F.3d at 13. The First Circuit condemned Defendants' conduct stating: "[f]inally, we wish to note again the manifest injustice of the conduct of the government of the Commonwealth of Puerto Rico throughout this affair." *Id* at 14. The alleged unequal treatment given to Plaintiff and the many acts deliberately performed by the individual Co-defendants, either directly or indirectly, are a clear statement of an intent to injure. We find that Plaintiff has pled sufficient facts to sustain its claim for violation of substantive due process, and therefore, Defendants' motion to dismiss Futura's third cause of action will be **DENIED.**

### Plaintiff's Fourth Cause of Action—Civil Rights Violation

Paragraphs 185 through 195 of Plaintiff's amended complaint contains Futura's

fourth cause of action against defendants, namely the violation of Futura's civil rights. Futura claims that the alleged deprivation of its property interest in contravention of the Due Process Clause and the denial to them of the equal protection of the laws provides them with a cause of action under 42 U.S.C. § 1983, 1985(3) and 1988.

Plaintiff alleges once again that, under color of state law, Defendants conspired to deprive Futura of said constitutional guarantees and thus they are entitled to damages. Section 1983 of title 42 of the United States Code provides that:

> Every person who, under color of any statute, ordinance, regulation custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any tights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding. . . .

42 U.S.C. § 1983. Furthermore, section 1985(3) provides a private cause of action when "two or more persons . . . conspire . . . for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws. ." See 42 U.S.C. § 1985(3).

The survivability of Plaintiff's cause of action under section 1983 depends on whether the amended complaint provides a adequate factual support to its equal protection and due process claims. This is so because section 1983 is not a source of substantive tights, it is merely the vehicle by which the deprivation of rights guaranteed by the Constitution or the laws are vindicated against governmental actors. See Albright v. Oliver, 510 U.S. 266, 271,

114 S.Ct. 807, 127 L.Ed.2d 114 (1994) (citations omitted). In addition, Plaintiff's claim of a conspiracy under section 1985(3) will not survive Defendants' motion to dismiss unless a minimum of factual support for such claim of conspiracy is pleaded. See Slotnick v. Staviskey, 560 F.2d 31, 33 (1st Cir.1977) ("[C]omplaints cannot survive a motion to dismiss if they contain conclusory allegations of conspiracy but do not support their claims with references to material facts."); see also Romero–Barceló v. Hernández–Agosto, 75 F.3d at 35.

As stated previously, Futura's amended complaint has set forth sufficient factual allegations to sustain both the equal protection and the substantive due process claims. Similarly, we conclude that plaintiff has alleged enough facts to establish a claim that Defendants' conduct was performed as part of a conspiracy to injure Plaintiff and deny it the collection of the MD judgment. Therefore, Defendants' motion to dismiss Plaintiff's fourth cause of action for violation of civil rights will be **DENIED.**

**Plaintiff's Fifth Cause of Action—Impairment of Contractual Obligations**

Plaintiffs fifth cause of action (paragraphs 196–202) alleges that the conduct of Defendants has impaired its contractual obligations in violation of U.S. Const. art. I, § 10. In support of this allegation Plaintiff contends that Defendants' conduct "have impaired a judgment based on the contractual relationship of the parties" (Docket # 88, at 91, ¶ 198), and that the MD judgment was as much a part of the contractual relationship of the parties as the relationship that existed before the judgment (Docket # 88, at 91, ¶ 200). Article I, section 10 of the Constitution states that "[n]o State shall. . . pass any. . . Law impairing the obligations of contracts. . . ." In order to invoke the protection of this clause, a contractual rela-

tionship must exist, that relationship must be impaired by a change in the law, and the impairment must be substantial. *See General Motors Corp. v. Romein,* 503 U.S. 181, 186, 112 S.Ct. 1105, 117 L.Ed.2d 328 (1992). "The obligations of a contract are impaired by a law which renders them invalid, or releases or extinguishes them...." *Home Bldg. & Loan Ass'n v. Blaisdell,* 290 U.S. 398, 431, 54 S.Ct. 231, 78 L.Ed. 413 (1934) (emphasis added). The Contract Clause prevents the impairment of obligations only by legislative action. *See Rooker v. Fidelity Trust Co.,* 261 U.S. 114, 118, 43 S.Ct. 288, 67 L.Ed. 556 (1923). In applying those principles, it must be concluded that the restrictions of the Contract Clause can only be imposed against a law passed by the legislature, if the effect is a substantial impairment of an existing contractual obligation. In view of the above, Plaintiff's amended complaint with respect to this cause of action must fail. First, there is no contractual relationship. It has been stated that a judgment, although based on a contract, is not deemed to be within the provision of the Contract Clause. *See Home Bldg.,* 290 U.S. at 429 n. 8, 54 S.Ct. 231. Second, Plaintiff's allegations do not challenge a particular legislative action, rather they challenge the conduct of individuals. Accordingly, we do not even need to examine whether that impairment was substantial. As a matter of law, Plaintiffs fifth cause of action must be DISMISSED since there are no set of alleged specific facts that the plaintiff could prove that would entitle them to the protections of the Contract Clause.

**Plaintiff's Sixth Cause of Action—Tortious Interference**

■ Plaintiffs sixth cause of action alleges that Defendants' conduct, in furtherance of the alleged conspiracy, substantially and tortiously interfered with Futura's business relationship with its banking institutions, its creditors and customers. (*See* Docket # 88, at 92, ¶ 204.) Among other things, Futura claims that said interference has caused them the loss of reputation with its financial institutions, loss of business opportunities and negative equity in the consolidated financial statement of its parent corporation. Futura claims a substantial amount of damages for all of these violations.

■ The Supreme Court of Puerto Rico has recognized that under article 1802 of the Puerto Rico Civil Code, 31 P.R. Laws Ann. § 5141, a cause of action exists for tortious interference with the contractual obligations of third parties. *See Dolphin Int'l of P.R. v. Ryder Truck Lines,* 127 D.P.R. 869, 879, 1991 WL 735928 (1991) *citing General Office Prods. v. A.M. Capen's Sons,* 115 D.P.R. 553, 558–59, 1984 WL 270915 (1984). The elements for this cause of action are: (1) the existence of a contract with which a third person interferes; (2) fault must be present; (3) the plaintiff has to be damaged; and (4) those damages are "the result of a third person's tortious acts. *Id.* The element of fault requires a strong showing, namely that the defendant acted tortiously, with knowledge of the contract's existence." *New Comm Wireless Servs. v. SprintCom, Inc.,* 287 F.3d 1, 10 (1st Cir.2002) *quoting General Office Prods.,* 115 D.P.R. 553. The Puerto Rico Supreme Court recently explained that, with respect to this element, the defendant has to intentionally interfere, knowing that such interference will injure the plaintiff. *See Jusino Figueroa v. Walgreens of San Patricio Inc.,* 2001 TSPR 150, 2001 WL 1414693 (2001) (translation ours). The aggrieved party need only show or present evidence from which it could be inferred that the third person acted in a wilful manner and with knowl-

edge of the existence of the contract. *General Office Prods.,* 115 D.P.R. 553.

Moreover, the existence of a contract is an indispensable requirement in tortious interference actions. "The action does not lie when what is affected is a mere expectancy or a profitable financial relationship." *Dolphin Int'l of P.R.,* 127 D.P.R. at 883. In *Dolphin,* the Supreme Court refused to extend this cause of action to apply, like at common-law, to profitable economic relations not based on contracts. *Id.* So the cause of action for tortious interference presupposes the existence of a contract or contractual relation that is interfered with by the third person. *See id.*

In applying these principles to the instant case, it is apparent that Futura's amended complaint suffers from one major flaw. Even though Futura alleges the elements of fault, and the nexus between Defendants' conduct and the damage suffered, Futura has failed to allege a specific contract or contractual relationship. On the contrary, the amended complaint alleges a general loss of business opportunity, the denial of credit by a number of banking institutions and the negative equity in the financial statement of its parent corporation. These alleged damages are mere expectancies that factor in Futura's prospect of economic gain but are not cemented in a particular contract with which the individual Co-defendants knowingly interfered.

Plaintiffs argue in their objections that the Magistrate Judge erroneously assumed that what Plaintiff intended to describe was a cause of action for tortious interference with contractual relations. They now clarify in their objections that Defendants' purposeful conduct interfered with Futura's business relationships with its banking institutions and Futura's other creditors and customers, and resulted in specific damage to Futura. Thus, Futura's claim against Defendants, as outlined in the sixth cause of action, is more aptly characterized as a cause of action for the tort of injurious falsehood, rather than a cause of action for interference with contractual relations. Plaintiff makes allegations in the cause of action referring to specific business relationships that have been interfered with, or which were adversely affected by Defendants' purposeful conduct. For example, Paragraph 208 refers to, amongst others, four specific banks, Caguas Central Bank, Chase Manhattan Bank, Derby Savings Bank of Connecticut and First Federal Savings and Loan, that denied Plaintiff, a developer, financing for its projects. However, after closely reviewing the amended complaint, we conclude that there are no concrete allegations or facts that establish or lead this court to logically construe that Defendants engaged in acts of injurious falsehood, disparagement or interference with prospective advantage, or that even if Defendants' alleged acts were taken as true, they were the direct cause of the alleged damage in Plaintiff's economic relations. For these reasons, Futura's sixth cause of action will be DISMISSED.

### Plaintiff's Seventh Cause of Action— Article 1802 of the P.R. Civil Code

Futura's seventh and final cause of action appears in paragraphs 212 through 214 of the amended complaint. The general allegation is that Defendants' conduct, as set forth in the complaint, violates article 1802 of the Puerto Rico Civil Code, 31 P.R. Laws Ann. § 5141.

Section 5141 states that "[a] person who by an act or omission causes damage to another through fault or negligence shall be oblige to repair the damage so done." All damage, whether material or moral, gives rise to reparation if three requirements are met: first, proof of the reality of the damage suffered; second, a

causal relation between the damage and the action or omission of another person; and third, said act or omission is negligent or wrongful. *La Sociedad de Gananciales v. El Vocero de Puerto Rico, Inc.*, 135 D.P.R. 122, 134, 1994 WL 909249 (1994). The concept of fault in article 1802 has been stated to be as broad as human behavior, and it includes "every kind of human trespass in the legal as well as the moral order." *Id.* "This principle generally rules redress for a wrongful act, even when the wrongful act clashes against the interest or rights guaranteed by the Constitution or by civil rights legislation." *Bonilla v. Chardón*, 118 D.P.R. 599, 610, 1987 WL 448335 (1987).

■ Mindful of the above-described principle, we agree with the Magistrate's assessment and find that Plaintiffs amended complaint has set forth a sufficient factual basis to establish a cause of action under article 1802. In other words, Plaintiff's allegation of violation of civil rights—due process and equal protection—is sufficient to state a claim that, through fault, Plaintiff suffered a real injury or damage, and that the injury was causally related to the acts or omissions of the individual Co-defendants. For these reasons, Defendants' motion to dismiss this claim will be **DENIED.**

## Qualified Immunity

In the alternative, Defendants argue that, even if the court accepts Plaintiff's amended complaint as stating a claim upon which relief can be granted, the claims against Defendants in their official capacities are barred by the Eleventh Amendment of the U.S. Constitution. It is also asserted by Defendants that they enjoy qualified immunity for any conduct that Plaintiff complains was committed in their personal or individual capacities. Therefore, they claim these reasons warrant dis-

missal of the amended complaint. We do not concur with Defendants' assessment, at this time.

■ The Eleventh Amendment of the United States Constitution states:

The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. Const. amend. XI. In *Pennhurst State School & Hosp. v. Halderman*, the Supreme Court stated that "[t]he Eleventh Amendment bars a suit against state officials when the state is the real, substantial party in interest." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984) *quoting Ford Motor Co. v. Department of Treasury*, 323 U.S. 459, 464, 65 S.Ct. 347, 89 L.Ed. 389 (1945). It has further been stated that: "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989) (citations omitted).

■ More specifically, section 1983 suits are barred by the Eleventh Amendment when the actions complained of were committed by the state official in his or her official capacity. *See Wang v. New Hampshire Bd. of Registration in Medicine*, 55 F.3d 698, 700 (1st Cir.1995). The applicability of Eleventh Amendment immunity has been specifically extended to suits against the Commonwealth of Puerto Rico. *See Arecibo Community Health Care. Inc. v. Commonwealth of Puerto Rico*, 270 F.3d 17,21 n. 3 (1st Cir.2001)

*citing Ortiz–Feliciano v. Toledo–Dávila,* 175 F.3d 37, 39 (1st Cir.1999).

Taking into account these principles, Plaintiff's claims under section 1983 for violation of its constitutional rights by the Defendants acting in their official capacities are barred by the Eleventh Amendment. However, in the instant case we find that Plaintiff's claims against Defendants are for actions committed in their personal or individual capacities. Plaintiff's amended complaint, specifically the second cause of action, states that "[t]he individual defendants are sued in their personal and/or official capacities." (Docket # 88, at 37, ¶ 106) (emphasis added). In addition, as Plaintiff points out in its objections to the Magistrate's report and recommendation, Defendants were also sued in their personal capacity in all the other causes of action (Docket # 225, pag. 15).

However, Defendants argue that, in their individual capacities, they are also protected by qualified immunity. The doctrine of qualified immunity "was created to shield government officials from civil liability for the performance of discretionary functions so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Atwater v. City of Lago Vista,* 532 U.S. 318, 367, 121 S.Ct. 1536, 149 L.Ed.2d 549 (2001) *citing Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). In defining the limits of this good-faith defense, the Supreme Court has said that "[w]here an official could be expected to know that certain conduct would violate statutory or constitutional rights,... a person who suffers injury caused by such conduct may have a cause of action." *Harlow,* 457 U.S. at 819, 102 S.Ct. 2727. "The contours of the right must be sufficiently clear that a reasonable official would understand that what he [or she] is

doing violates that right." *Acevedo–Garcia v. Vera–Monroig,* 204 F.3d 1, 10 (1st Cir.2000) *quoting Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987).

Thus the court needs to determine (1) whether the constitutional right allegedly involved is a clearly established one; and (2) whether a reasonable official in the same circumstances would have understood that his or her conduct violated that right. *Fletcher v. Town of Clinton,* 196 F.3d 41, 45 (1st Cir.1999).

In this case, it is specifically alleged that the individual Co-defendants were able to understand that the alleged denial of payment of the MD judgment to Futura violated clearly established constitutional rights. The conduct complained of is, *inter alia,* treating Plaintiff's different than similarly situated creditors, deliberate and wilful conduct with the intent to injure Plaintiff's constitutional rights, and a conspiracy to evade payment of the judgment through conduct that among other things included stripping CDC of its assets and providing the Puerto Rico legislature with faulty information. A reasonable official circumstances similar to those alleged should have known that such conduct violated clearly established constitutional rights guaranteed by the Due Process and Equal Protection Clauses of the Constitution. Furthermore, at this time, the Court is not in a position in which it can examine possible evidence that could be presented by means of a summary judgement motion, or even during trial, that would help to controvert the allegations made by Plaintiff. Therefore, accepting as true all the factual allegations presented by Plaintiff in the amended complaint, and construing a reasonable inference in favor of Plaintiff that these individuals should have known the illegality of the alleged actions, Defendants' motion to dismiss on the grounds

that they enjoy qualified immunity will be **DENIED.**

## Statute of Limitation

Defendants finally contend in their motion to dismiss that even if Plaintiff's complaint is found to state a claim upon which relief can be granted, its claims are barred by the applicable statute of limitation.

 It has been held that in suits alleging violations of civil rights under 42 U.S.C. § 1983, federal courts should borrow the state's statute of limitations for personal injury actions. *Owens v. Okure*, 488 U.S. 235, 236, 109 S.Ct. 573, 102 L.Ed.2d 594 (1989). It is also well established that in Puerto Rico the statute of limitation applicable to section 1983 actions is the one-year statute of limitation applicable to personal injury or tort claims established in 31 P.R. Laws Ann. § 5298. *See Carreras–Rosa v. Alves–Cruz*, 127 F.3d 172, 174 (1st Cir.1977). However, even though state law supplies the applicable statute of limitation, the accrual of the period is governed by federal law. *Guzman–Rivera v. Rivera–Cruz*, 29 F.3d 3, 5 (1st Cir.1994). The accrual period in a section 1983 action "ordinarily starts when the plaintiff knows, or has reason to know, of the injury on which the action is based." *Rivera–Muriente v. Agosto–Alicea*, 959 F.2d 349, 353 (1st Cir.1992).

 The first step in determining accrual is "to identify the actual injury of which plaintiff complains." *Guzman–Rivera*, 29 F.3d at 5. It is well-established that an affirmative defense may properly be raised in a motion to dismiss. *Blackstone Realty, LLC v. F.D.I.C.*, 244 F.3d 193, 197 (1st Cir.2001). However, granting the motion based on statute of limitations is only proper when the allegations of the pleader leave no doubt that the claims are time-barred. *See LaChapelle v. Berkshire Life Ins. Co.*, 142 F.3d 507, 509 (1st Cir.

1998). "[t]he facts establishing the defense must be 'clear on the face of the plaintiff's pleading.'" *Blackstone Realty LLC*, 244 F.3d at 197 *quoting Aldahonda–Rivera v. Parke Davis & Co.*, 882 F.2d 590, 591 (1st Cir.1989).

After reviewing the amended complaint, we conclude that most of the unlawful conduct alleged in it establishes a continuing scheme to evade payment with a number of instances falling within the one-year period prior to the filing of the original complaint and continuing even after. Several allegations specifically make reference to actions committed in 1991 and 1992 by Governor Hernández Colón with knowledge and participation of the other Defendants. (See Docket # 88, at 61, ¶ 134, at 72, ¶ 154. and at 76, ¶ 157k.) Furthermore, at this time, the Court is not in a position in which it can examine possible evidence that could be presented by means of a summary judgement motion, or even during trial that would help to controvert the allegations made by Plaintiff. Therefore, accepting as true all the factual allegations presented by Plaintiff in the complaint and construing a reasonable inference in favor of Plaintiff that these illegal actions were carried out under a pattern of continued conduct one year prior to the filing of the action, and even after the filing of the original complaint, we find that it is not clear that the claims are time-barred. Considering that the standard is a stringent one, namely that the allegations of the pleader must leave no doubt that the statute of limitation has run, we find that at this time Defendants' motion must be **DENIED.**

## Conclusion

Therefore, for the reasons stated herein, Defendants' motion to dismiss is **GRANTED** as to Plaintiff's fifth and sixth causes of action and **DENIED** as to the second,

third and seventh causes of action. Furthermore, the stay on the discovery proceedings is lifted and a further settlement conference is set for **August 25 at 4:30 p.m.**. Finally, the Court will also proceed to issue a revised expedited case management order.

**SO ORDERED.**